Order, Supreme Court, New York County (Barbara R. Kapnick, J.), entered April 24, 2012, which, to the extent appealed, denied defendant’s motion to dismiss the causes of action for fraudulent inducement and fraudulent concealment, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment dismissing the amended complaint.
Plaintiff alleges that it was fraudulently induced to issue a financial guaranty for a portion of an investment by defendant’s misrepresentation that a nonparty hedge fund was taking a long position in the investment when in fact, such fund was actually a short seller, which was influencing the selection of the reference portfolio it was effectively betting against.
The motion court erred when it denied defendant’s motion to dismiss plaintiff’s causes of action for fraud. While we agree that plaintiff adequately pleaded all of the requisite elements comprising a fraud claim (Dembeck v 220 Cent. Park S., LLC, 33 AD3d 491, 492 [1st Dept 2006] [“To make a prima facie claim of fraud, the complaint must allege misrepresentation or concealment of a material fact, falsity, scienter on the part of the wrongdoer, justifiable reliance and resulting injury”]), plaintiff’s amended complaint nevertheless fails to establish justifiable reliance as a matter of law. Indeed, plaintiff fails to plead that it exercised due diligence by inquiring about the nonpublic information regarding the hedge fund with which it was in contact prior to issuing the financial guaranty, or that it inserted the appropriate prophylactic provision to ensure against the possibility of misrepresentation (see Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 76 AD3d 310, 320-321 [1st Dept 2010], affd 17 NY3d 269 [2011]). In Centro Empresarial Cempresa S.A., we dismissed plaintiffs’ complaint alleging, inter *495 alia, fraud, holding that the fraud claim was barred by the omission of necessary language in the release between the parties (id.). Specifically, we stated that “[i]f plaintiffs did not intend to release claims of fraud . . . , they should have insisted on access to . . . internal books and records . . . [and] if plaintiffs did not wish to forgo suing on a fraud claim they might discover in the future, these sophisticated and well-counseled entities should have insisted that the release [barring future claims] be conditioned on the truth of the financial information provided by defendants (whether directly or through public filings) on which plaintiffs were relying. In essence, by entering into the 2003 sale of their interests in reliance on defendants’ unverified representations concerning [defendant’s] financial condition, without inserting into the agreement a prophylactic provision to ensure against the possibility of misrepresentation plaintiffs may truly be said to have willingly assumed the business risk that the facts may not be as represented” (id. [internal quotation marks, citations and ellipsis omitted]; see also Graham Packaging Co., L.P. v Owens-Illinois, Inc., 67 AD3d 465 [1st Dept 2009]; Permasteelisa, S.p.A. v Lincolnshire Mgt., Inc., 16 AD3d 352 [1st Dept 2005]; cf. DDJ Mgt., LLC v Rhone Group L.L.C., 15 NY3d 147, 154 [2010]).
Here, in agreeing with the motion court’s denial of defendant’s motion, the dissent attempts to distinguish our holding in Centro Empresarial Cempresa S.A. (76 AD3d 310), where we held that a fraud claim is barred where a sophisticated and well-counseled entity fails to include an appropriate prophylactic provision in the agreement governing the transaction from which the legal dispute arises to ensure against the possibility of misrepresentation (id. at 320-321). Since the release in that action was part and parcel of the agreement between the parties, we reject the dissent’s attempt to limit our holding in Centro Empresarial Cempresa S.A. to cases where contracting parties fail to insert in a release appropriate prophylactic provisions to ensure against the possibility of misrepresentation. Proof that our holding in Centro Empresarial Cempresa S.A. is not so limited is found in Graham Packaging Co. (67 AD3d 465), where we affirmed the dismissal of defendants’ counterclaim for fraudulent concealment since they failed to, inter alia, insert “a prophylactic provision in the settlement agreement to limit their exposure” (id. at 465 [emphasis added]). Similarly, in Permasteelisa, S.p.A. (16 AD3d 352), we affirmed dismissal of plaintiffs cause of action for fraud when, inter alia, it failed to insert “a prophylactic provision in the purchase agreement to ensure against the possibility of misrepresentation” (id. at 352 [emphasis added]).
*496 Equally unavailing is the dissent’s attempt to distinguish this case from Centro Empresarial Cempresa S.A. on the ground that the relationship between the parties here was not adversarial, thereby implying that our holding in Centro Empresarial Cempresa S.A. was limited to transactions between adverse parties. Notwithstanding that in that case we noted that the parties were in an adversarial and hostile relationship (id. at 320-321), nothing in Centro Empresarial Cempresa S.A. limited its holding to adverse transacting parties; nor could it, since parties are seldom, if ever, adversaries at the outset of a transaction, when the terms of an agreement are ordinarily crafted. Instead, parties amicably transacting business often become adversaries when, as here, they meet in court averring that one party wronged the other. A well crafted agreement should protect against this very eventuality. More specifically, because parties can seldom be certain that the representations made by other contracting parties are indeed true, they must—lest their cause of action for fraud be barred—insert the requisite prophylactic provision to ensure against the possibility of misrepresentation. Notably, the dissent’s attempt to characterize the nature of the relationship between the parties here as one of trust and good faith is belied by the allegations in plaintiffs own complaint, which, as noted by the dissent, evinces that prior to the execution of the agreement between the parties, plaintiff, via email, sought confirmation from defendant regarding the nonparty hedge fund’s role and position in the transaction. Accordingly, it is clear that notwithstanding plaintiff’s understanding as to the nature of the transaction and the roles of all parties concerned, it nevertheless sought assurances from the defendant presumably to prevent a misunderstanding and/or the very fraud for which it now sues.
Moreover, the dissent’s position is particularly unpersuasive insofar as plaintiff could have, upon further inquiry, uncovered the nonparty hedge fund’s actual position, but apparently chose not to (Centro Empresarial Cempresa S.A., 76 AD3d at 319-320; Graham Packaging Co., 67 AD3d at 465; Permasteelisa, S.p.A., 16 AD3d at 352). Specifically, plaintiff received, inter alia, the offering circular for the transaction, which expressly disclosed that no one was investing in the first-loss tranche. This information should have alerted plaintiff that contrary to the representations made, the nonparty hedge fund was not funding a portion of the transaction at all, let alone in the manner represented (i.e., by taking the equity or long position). Therefore, plaintiff should have questioned defendant or the nonparty hedge fund; such an inquiry would have likely informed plaintiff that the nonparty hedge fund was taking a short rather than *497 the long equity position represented. We reject the dissent’s assertion that the absence of any funding of the first loss tranche was attributable to the fact that the nonparty hedge fund was purportedly funding the first-loss tranche by taking the long position on a credit default swap. This assertion does not explain why the tranche was completely unfunded, since even the funding mechanism perceived by plaintiff—the credit default swap— should have had a value and thus should have been listed in the offering circular.
In sum, plaintiffs fraud claims based on the allegation that plaintiff, a highly sophisticated commercial entity, was misled into believing that a nonparty hedge fund would take a long position in the first-loss tranche of the collateral debt obligation, in alignment with plaintiff’s interests, must be dismissed because: (1) such misrepresentations were specifically contradicted by the offering circular’s disclosure that no such equity position was being taken; (2) plaintiffs alleged reliance on such misrepresentations would have been contrary to its acknowledgment (as set forth in the offering circular) that, in entering into the transaction, it was “not relying (for purposes of making any investment decision or otherwise) upon any advice, counsel or representations (whether written or oral) of [defendant] . . . other than in the final offering circular for [the transaction] and any representations expressly set forth in a written agreement with such party,” and that defendant was not “acting as a fiduciary or financial or investment adviser for the purchaser”; and (3) the hedge fund’s intentions with regard to this investment were not peculiarly within defendant’s knowledge and plaintiff, although it was in direct contact with the hedge fund, failed to ask the hedge fund what position it intended to take in this investment (see Danann Realty Corp. v Harris, 5 NY2d 317 [1959]; HSH Nordbank AG v UBS AG, 95 AD3d 185 [1st Dept 2012]).
In view of the foregoing, it is unnecessary to address defendant’s remaining contentions. Concur—Friedman, J.E, Renwick, and Román, JJ.